UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------x

RICARDO PERRY,

                                Plaintiff,

                -v-

THE CITY OF NEW YORK, New York City Police
Department Officer ("P.O.") RASHAWN HOLMAN
(Shield No. 25579) and P.O. NICHOLAS BEKAS
(Shield No. 04530), in their individual capacities,

                                Defendants.

-------------------------------------------------------------------x

COMPLAINT AND DEMAND
FOR A JURY TRIAL

Index No. 13-CV-_____

      Plaintiff RICARDO PERRY, through his attorney ROBERT M. QUACKENBUSH of Rankin & Taylor, PLLC, as and for his complaint, does hereby state and allege:

## PRELIMINARY STATEMENT

1. This is a civil rights action brought to vindicate plaintiff's rights under the Fourth and Fourteenth Amendments of the Constitution of the United States, through the Civil Rights Act of 1871, *as amended*, codified as 42 U.S.C. § 1983, along with a pendant claim of malicious prosecution under New York law.

2. Plaintiff RICARDO PERRY's rights were violated when officers of the NEW YORK CITY POLICE DEPARTMENT ("NYPD") unconstitutionally and without any legal basis used unlawful and excessive force against him and caused him to be maliciously prosecuted despite the absence of probable cause for any of the charged crimes. By reason of defendants' actions, Mr. PERRY was deprived of his constitutional rights.

3. Mr. PERRY also seeks an award of compensatory and punitive damages and attorneys' fees.

## JURISDICTION AND VENUE

4. This Court has subject matter jurisdiction over federal claims pursuant to 28 U.S.C. §§ 1331, 1343(a)(3-4). This action is brought pursuant to 42 U.S.C. §§ 1983 and 1988 for violations of the Fourth and Fourteenth Amendments to the Constitution of the United States.

5. Venue is proper pursuant to 28 U.S.C. § 1391(a)(2) in that Mr. PERRY's claim arose in the Eastern District of New York.

6. Pursuant to New York State General Municipal Law § 50-E, Mr. PERRY filed a timely Notice of Claim with the New York City Comptroller on or about December 7, 2012. Mr. PERRY's claims were not adjusted by the New York City Comptroller's Office within the period of time provided by statute. This Court therefore has supplemental jurisdiction over Mr. PERRY's malicious prosecution claim under New York law because it is so related to the within federal claims that they form part of the same case or controversy pursuant to 28 U.S.C. § 1367(a).

7. An award of costs and attorneys' fees is authorized pursuant to 42 U.S.C. § 1988.

## PARTIES

8. Plaintiff RICARDO PERRY is and was at all times relevant to this action a resident of the County of Nassau in the State of New York.

9. Defendant THE CITY OF NEW YORK ("CITY") is a municipal entity created and authorized under the laws of the State of New York. It is authorized by law to maintain a police department, which acts as its agent in the area of law enforcement and for which it is ultimately responsible. The CITY assumes the risks incidental to the maintenance of a police force and the employment of police officers as said risks attach to the public consumers of the services provided by the NYPD.

2

10. New York City Police Department Officer ("P.O.") RASHAWN HOLMAN (Shield No. 25579) and P.O. NICHOLAS BEKAS (Shield No. 04530) are and were at all times relevant herein, officers, employees and agents of the NYPD.

11. P.O. HOLMAN and P.O. BEKAS are being sued in their individual capacities.

12. At all times relevant herein, P.O. HOLMAN and P.O. BEKAS were acting under color of state law in the course and scope of their duties and functions as agents, servants, employees and officers of the NYPD, and otherwise performed and engaged in conduct incidental to the performance of their lawful functions in the course of their duties. They were acting for and on behalf of the NYPD at all times relevant herein, with the power and authority vested in them as officers, agents and employees of the NYPD and incidental to the lawful pursuit of their duties as officers, employees and agents of the NYPD.

13. P.O. HOLMAN and P.O. BEKAS' acts hereafter complained of were carried out intentionally, recklessly, with malice, and in gross disregard of Mr. PERRY's rights.

14. At all relevant times, P.O. HOLMAN and P.O. BEKAS were engaged in a joint venture, assisting each other in performing the various actions described herein and lending their physical presence and support and the authority of their offices to one another.

## STATEMENT OF FACTS

15. As set forth herein, P.O. RASHAWN HOLMAN and P.O. NICHOLAS BEKAS used unconstitutionally excessive force against plaintiff RICARDO PERRY on June 19, 2012, at approximately 8:45 a.m. in Metropolitan Transit Authority's Jamaica Center / Parsons-Archer subway station in the County of Queens of the State of New York.

16. At approximately the above date and time, Mr. PERRY arrived via bus from Nassau County on his way to work in Manhattan, and, as is his custom, he walked to the Manhattan-bound "E" train platform.

17. When Mr. PERRY arrived on the platform, the train was sitting stationary on the platform with only one door open since it was the terminal stop for the "E" train. Accordingly, Mr. PERRY and scores of other passengers boarded the train through the one open door and walked between the cars in order to spread throughout the stationary train.

18. Shortly thereafter, P.O. HOLMAN ordered Mr. PERRY to get off the train and come speak with him.

19. After Mr. PERRY complied and gave P.O. HOLMAN his identification, P.O. HOLMAN indicated he was going to arrest Mr. PERRY for walking between the cars. Mr. PERRY verbally protested, reminding the officer that dozens of other passengers walked between the cars before him and after him. P.O. HOLMAN responded that he intended to "make an example" for others by arresting Mr. PERRY.

20. While holding Mr. PERRY's identification, P.O. HOLMAN ordered Mr. PERRY to sit down on a nearby bench and grabbed his canister of pepperspray.

21. In response, Mr. PERRY turned his back to P.O. HOLMAN and stood still.

22. P.O. HOLMAN then called for back-up.

23. When Mr. PERRY saw another officer (P.O. BEKAS) approaching the scene, he waved towards the officer to get his attention. In response, P.O. HOLMAN immediately jumped on Mr. PERRY's backed and yelled, in sum and substance, "HE'S RESISTING!"

24. P.O. HOLMAN and P.O. BEKAS tackled Mr. PERRY to the ground.

25. While P.O. BEKAS was laying on top of Mr. PERRY's back – thereby pinning one of Mr. PERRY's arms under the combined weight of his body and P.O. BEKAS' body – P.O. HOLMAN discharged a large amount of pepperspray directly into Mr. PERRY's eyes, and P.O. HOLMAN thereafter repeatedly drove his knee into Mr. PERRY's back – despite Mr. PERRY's obvious attempts to comply with police orders.

26. As the officers were handcuffing Mr. PERRY, P.O. HOLMAN continued to drive his knee into Mr. PERRY's back.

27. After Mr. PERRY had been handcuffed, P.O. HOLMAN took a nearby bottle of water and, instead of splashing it on Mr. PERRY's eyes, he emptied all of it onto Mr. PERRY's shirt.

28. Soon thereafter, an NYPD supervisor arrived on scene. Mr. PERRY informed the supervisor that he was unable to walk on his own due to injuries sustained during the beating.

29. The officers then took Mr. PERRY to a nearby police station. After spending a short time in the precinct, Mr. PERRY was transported to Jamaica Hospital Center where they treated his injuries. He was then taken back to the precinct.

30. Upon information and belief, both P.O. HOLMAN and P.O. BEKAS forwarded, or caused to be forwarded, false information about the incident to the prosecutor, thereby causing the prosecutor to press various criminal charges – including felony assault – against Mr. PERRY.

31. Based upon P.O. BEKAS' sworn allegations, Mr. PERRY was charged with, *inter alia*, assault in the second degree (N.Y. Pen. L. § 120.05(3)), obstruction of governmental administration in the second degree (N.Y. Pen. L. § 195.05), and resisting arrest (N.Y. Pen. L. § 205.30).

32. Upon information and belief, on or about November 25, 2012, P.O. HOLMAN and P.O. BEKAS testified before the grand jury concerning the incident.

33. Upon information and belief, both P.O. HOLMAN and P.O. BEKAS testified consistent with the lies contained in the accusatory instrument, which was sworn to by P.O. BEKAS.

34. Mr. PERRY and a civilian eyewitness (who also recorded the use of force on her cell phone's video recorder) also testified before the grand jury.

35. After hearing all testimony offered by the prosecutor, the grand jury returned no true bill and refused to indict Mr. PERRY for any offense.

36. On or about November 26, 2012, all charges against Mr. PERRY were dismissed.

37. As a result of the felony prosecution, Mr. PERRY lost employment as a security guard.

38. As a result of the uses of force by P.O. HOLMAN and P.O. BEKAS, Mr. PERRY suffered extreme pain to his eyes and substantial pain and injuries to his back and abdomen. Mr. PERRY's injuries also forced him to miss work assignments in his shipping-and-receiving position.

**FIRST CLAIM FOR RELIEF**
**UNREASONABLE SEIZURE – EXCESSIVE FORCE**
**FOURTH AND FOURTEENTH AMENDMENTS THROUGH 42 U.S.C. § 1983**
*(Against P.O. HOLMAN and P.O. BEKAS)*

39. Mr. PERRY repeats and realleges each and every allegation contained in paragraphs numbered "1" through "38" with the same force and effect as if fully set forth herein.

40. The level of force employed by P.O. HOLMAN and P.O. BEKAS was objectively unreasonable and in violation of Mr. PERRY's constitutional rights guaranteed by the Fourth and Fourteenth Amendments to the United States Constitution. Moreover, P.O. BEKAS was in a position to prevent P.O. HOLMAN from using constitutionally-excessive force, but he failed to intervene – thereby making him liable for P.O. HOLMAN's use of force as well as his own.

41. As a result of the aforementioned conduct of the officer-defendants, Mr. PERRY was subjected to unreasonably excessive force, causing injuries.

**SECOND CLAIM FOR RELIEF**
**MALICIOUS PROSECUTION**
<u>**FOURTH AND FOURTEENTH AMENDMENTS THROUGH 42 U.S.C. § 1983**</u>
***(Against P.O. HOLMAN and P.O. BEKAS)***

42. Mr. PERRY repeats and realleges each and every allegation contained in paragraphs numbered "1" through "41" with the same force and effect as if fully set forth herein.

43. By the actions described above – including but not limited to the false allegations against Mr. PERRY in the accusatory instrument which were sworn to by P.O. BEKAS, by the false information which P.O. BEKAS and P.O. HOLMAN forwarded to the prosecutor which resulted in Mr. PERRY being charged in criminal court despite the absence of probable cause for any of the charged defenses, and by the perjurious testimony offered by P.O. BEKAS and P.O. HOLMAN before the grand jury – P.O. HOLMAN and P.O. BEKAS caused a criminal proceeding to be initiated and perpetuated against Mr. PERRY, even though there was no probable cause for any of the charged crimes. P.O. HOLMAN and P.O. BEKAS maliciously caused this prosecution to be initiated in that they knew there was no probable cause for such prosecution and that they further wished to harm and punish plaintiff for illegitimate reasons. The criminal case against Mr. PERRY was terminated in his favor in that all charges were dismissed in their entirety when the grand jury returned no true bill.

44. As a result of the foregoing, Mr. PERRY was deprived of his post-arraignment liberty, suffered psychological and emotional injury, humiliation, costs and expenses, lost employment as a security guard, and was otherwise damaged and injured.

## THIRD CLAIM FOR RELIEF
## UNREASONABLE SEIZURE – EXCESSIVE FORCE
## FOURTH AND FOURTEENTH AMENDMENTS THROUGH 42 U.S.C. § 1983
### *(Against THE CITY OF NEW YORK)*

45. Mr. PERRY repeats and realleges each and every allegation contained in paragraphs numbered "1" through "44" with the same force and effect as if fully set forth herein.

46. P.O. HOLMAN and P.O. BEKAS' acts and omissions described above were carried out pursuant to the CITY's overlapping customs and practices which were in existence on June 19, 2012 and were engaged in with the full knowledge, consent, and cooperation and under the supervisory authority of the CITY and its agency, the NYPD.

47. The acts complained of were carried out by P.O. HOLMAN and P.O. BEKAS in their respective capacities as police officials pursuant to customs, policies, usages, practices, procedures and rules of the CITY and the NYPD, all under the supervision of ranking officers of the NYPD.

48. The aforementioned custom and practice of the CITY and the NYPD include, but are not limited to, the use of excessive force on arrestees who are restrained, controlled and compliant, as Mr. PERRY was in this case.

49. The existence of aforesaid unconstitutional custom and well-settled practice may be inferred from repeated occurrences of similar wrongful conduct, as documented in the following civil rights actions filed against the CITY:

   a. Tyler v. City of New York, 12-CV-1975 (JBW) (CLP) (E.D.N.Y.) (in retaliation for speech protected by the First Amendment, two NYPD officers sweep the legs out from under an already-handcuffed arrestee, causing the top of his head to collide with the pavement, causing a substantial laceration which required nearly a dozen stitches and staples);

   b. McKie v. City of New York, 12-CV-2070 (JG) (VVP) (E.D.N.Y.) (NYPD officers use pepper spray upon an individual who was under arrest, was prone and compliant with officers commands, and whose arm was pinned beneath his and the officers' combined weights during the entire use of force);

8

    c. Gad Alla v. City of New York, 11-CV-892 (FB) (RLM) (E.D.N.Y.) (NYPD officer uses catastrophic force to the side of an arrestee's head, even though the arrestee was compliant and prone, and even though multiple officers had their hands on his back, controlling his movements);

    d. Thompson v. City of New York, 10-CV-3603 (ARR) (SMG) (E.D.N.Y.) (while arrestee is handcuffed and compliant, NYPD officers use their Asp, or expandable metal baton, to beat plaintiff and also apply pepper spray to his face without cause);

    e. Zabala v. City of New York, 3771/2010 (Sup. Ct., Kings Co.) (NYPD officers severely beat and TASER a compliant, prone, bloodied and semi-conscious suspect after he had surrendered and was surrounded on all sides by police officers);

    f. Ashe v. City of New York, 09-CV-9696 (GBD) (THK) (S.D.N.Y.) (NYPD officers beat and use pepper spray upon two arrestees even though they were both already handcuffed and compliant);

    g. Moise v. City of New York, 09-CV-9855 (DC) (JLC) (S.D.N.Y.) (NYPD officers beat and use pepper spray upon a compliant arrestee while he was already in handcuffs); and

    h. King v. City of New York, 07-CV-4757 (FB) (JO) (E.D.N.Y.) (NYPD officer rear-cuffs compliant arrestee for possession of marijuana and places him prone on the pavement, then kicks him in the face and shoves his face into pavement).

50. Moreover, the Civilian Complaint Review Board ("CCRB") is a CITY agency, allegedly independent of the NYPD, that is responsible for investigating and issuing findings on complaints of police abuse and misconduct.[1]

51. When it does, however, NYPD Police Commissioner Raymond Kelly controls whether the NYPD pursues the matter and he alone has the authority to impose discipline on the subject officer(s).

---

[1] In 2006, out of more than 10,000 allegations that were fully investigated, the CCRB substantiated only 594 (about 6%). In 2007, out of more than 11,000 allegations that were fully investigated, the CCRB substantiated only 507 (about 5%). *See*, CCRB Jan.-Dec. 2007 Status Report at p. 19, *available at* http://www.nyc.gov/html/ccrb/pdf/ccrbann2007_A.pdf. Upon information and belief, the low rate of substantiated complaints is due in part to the above-noted de facto policy and/or well-settled and widespread custom and practice in the NYPD whereby officers refuse to report other officers' misconduct or tell false and/or incomplete stories, inter alia, in sworn testimony and statements given to the CCRB, to cover-up civil rights violations perpetrated by themselves or fellow officers, supervisors and/or subordinates.

52. Since 2005, during Commissioner Kelly's tenure, only one-quarter of officers whom the CCRB found engaged in misconduct received punishment more severe than verbal "instructions."

53. Moreover, the number of CCRB-substantiated cases that the NYPD has simply dropped (i.e., closed without action or discipline) has spiked from less than 4% each year between 2002 and 2006, to 35% in 2007, and approximately 30% in 2008.

54. Alarmingly, the NYPD has refused to prosecute 40% of the cases sent to it by the CCRB in 2009.[2]

55. As a result, the percentage of cases where the CCRB found misconduct but where the subject officers were given only verbal instructions or the matter was simply dropped by the NYPD rose to 66% in 2007.

56. Substantiated complaints of excessive force against civilians accounted for more than 10% of the cases that the NYPD dropped in 2007 and account for more than 25% of cases dropped in 2008.[3]

57. The existence of the above-described well-settled and widespread custom and practice – of using unnecessary and unreasonable force against arrestees who are adequately restrained or even handcuffed – is known to, encouraged and/or condoned by supervisory and policy-making officer and officials of the NYPD and the CITY, including, without limitation, Commissioner Kelly.

58. The actions of P.O. HOLMAN and P.O. BEKAS resulted from and were taken pursuant to the above-mentioned well-settled and widespread customs and practices of the CITY, which

---

[2] Christine Hauser, *Few Results for Reports of Police Misconduct*, New York Times, October 5, 2009, at A19.

[3] Daily News, *Editorial: City Leaders Must Get Serious About Policing the Police*, August 20, 2008.

are implemented by members of the NYPD. They do so with the knowledge and approval of their supervisors, commanders and Commissioner Kelly who all: (i) tacitly accept and encourage a code of silence wherein police officers refuse to report other officers' misconduct or tell false and/or incomplete stories, <u>inter alia</u>, in sworn testimony, official reports, in statements to the CCRB and the NYPD's Internal Affairs Bureau ("IAB"), and in public statements designed to cover for and/or falsely exonerate accused police officers; and (ii) encourage and, in the absence of video evidence exposing the officers' perjury, fail to discipline officers for "testilying" and/or fabricating false evidence to initiate and continue the malicious prosecution of civilians in order to cover-up civil rights violations perpetrated by themselves of fellow offices, supervisors and/or subordinates against those civilians.

59. All of the foregoing acts by defendants deprived Mr. PERRY of his federally-protected right to be free of unreasonable seizures.

60. The CITY knew or should have known that the acts alleged herein would deprive Mr. PERRY of his rights under the Fourth and Fourteenth Amendments to the United States Constitution.

61. The CITY is directly liable and responsible for P.O. HOLMAN and P.O. BEKAS' acts because it repeatedly and knowingly failed to properly supervise, train, instruct, and discipline themm – along with scores of other NYPD officers – and because it repeatedly and knowingly failed to enforce the rules and regulations of the CITY and to require compliance with the Constitution and laws of the United States.

62. Despite knowledge of such practice and/or custom, these supervisory and policy-making officials of the NYPD and the CITY, including Commissioner Kelly, have not taken steps to terminate these practices and/or customs, do not discipline individuals who engage in such

polices, practices and/or customs, or otherwise properly train police officers with regard to the constitutional and statutory limits on the exercise of their authority, and instead sanction and ratify these policies, practices and/or customs through their active encouragement of, deliberate indifference to and/or reckless disregard of the effect of said policies, practices and/or customs upon the constitutional rights of persons in the City of New York.

63. The aforementioned CITY custom of using unprovoked force against arrestees who are adequately restrained or even handcuffed is evidenced by the acts described above.

64. Specifically, pursuant to the aforementioned CITY practice and/or custom, P.O. HOLMAN and P.O. BEKAS felt empowered to exercise unreasonable and wholly unprovoked force against Mr. PERRY, apparently without fear that such use of force would result in disciplinary action or termination by the NYPD.

65. Mr. PERRY's injuries were a direct and proximate result of the CITY and the NYPD's well-settled and widespread custom and practice at issue in this litigation.

66. P.O. HOLMAN and P.O. BEKAS' actions resulted from and were taken pursuant to the well-settled and widespread custom and practice of the CITY, which implemented by agents or employees of the NYPD, of employing wholly unprovoked and excessive force against persons who are adequately restrained and pose no threat to officer safety.

### FOURTH CLAIM FOR RELIEF
### MALICIOUS PROSECUTION
### UNDER THE LAWS OF THE STATE OF NEW YORK
*(Against all defendants)*

67. Mr. PERRY repeats and realleges each and every allegation contained in paragraphs numbered "1" through "66" with the same force and effect as if fully set forth herein.

68. By the actions described above – including but not limited to the false allegations against the Mr. PERRY in the accusatory instrument which were sworn to by P.O. BEKAS, by the false

information which P.O. BEKAS and P.O. HOLMAN forwarded to the prosecutor which resulted in Mr. PERRY being charged in criminal court despite the absence of probable cause for any of the charged defenses, and by the perjurious testimony offered by P.O. BEKAS and P.O. HOLMAN before the grand jury – P.O. HOLMAN and P.O. BEKAS caused a criminal proceeding to be initiated and perpetuated against Mr. PERRY, even though there was no probable cause for any of the charged crimes. P.O. HOLMAN and P.O. BEKAS maliciously caused this prosecution to be initiated in that they knew there was no probable cause for such prosecution and that they further wished to harm and punish plaintiff for illegitimate reasons. The criminal case against plaintiff was terminated in his favor in that all charges were dismissed in their entirety when the grand jury returned no true bill.

69. The conduct of P.O. HOLMAN and P.O. BEKAS occurred while they were on duty and in uniform, and/or in and during the course and scope of their duties and functions as NYPD officers, and/or while they were acting as agents and employees of the CITY, clothed with and/or invoking state power and/or authority, and, as a result, the CITY is liable to Mr. PERRY pursuant to the state common law doctrine of *respondeat superior*.

70. As a result of the foregoing, Mr. PERRY was deprived of his post-arraignment liberty, suffered psychological and emotional injury, humiliation, costs and expenses, lost employment as security guard, and was otherwise damaged and injured.

## JURY DEMAND

71. Mr. PERRY demands a trial by jury in this action on each and every one of his damage claims.

**WHEREFORE**, Mr. PERRY demands judgment against the defendants individually and jointly and prays for relief as follows:

a. That he be compensated for violation of his constitutional rights, pain, suffering, loss of income, mental anguish and humiliation; and

b. That he be awarded punitive damages against P.O. HOLMAN and P.O. BEKAS; and

c. That he be compensated for attorneys' fees and the costs and disbursements of this action; and

d. For such other further and different relief as to the Court may seem just and proper.

Dated: New York, New York
July 22, 2013

                                      Respectfully submitted,

By: _____
Robert M. Quackenbush
Rankin & Taylor, PLLC
*Attorneys for the Plaintiff*
11 Park Place, Suite 914
New York, New York 10007
t: 212-226-4507
f: 212-658-9480
e: robert@drmtlaw.com